IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
---

MICHAEL C. WUSSOW,

                Plaintiff,                    OPINION & ORDER

    v.

                                                   16-cv-444-wmc

BRUKER CORPORATION,
BRUKER NANO, INC.,
MICHAEL SZULCZEWSKI, and
STEPHEN MINNE,

                Defendants.

---

Plaintiff Michael C. Wussow filed this action for employment discrimination and retaliation, claiming that defendants violated the Sarbanes-Oxley Act, 18 U.S.C. § 1514A, and the Dodd-Frank Act, 15 U.S.C. § 78u-6, by retaliating against him for engaging in protected whistleblowing activity. In response, defendants filed a motion to compel arbitration of plaintiff's Dodd-Frank claim, while staying all proceedings in this court pending the outcome of that arbitration. (Dkt. #10.) Wussow opposes that motion, contending that both claims (or at least his Sarbanes-Oxley claim) must be allowed to proceed in this court.

What would seem a straightforward case for arbitration based on the parties' written agreement is complicated by an amendment to the whistleblower protections under Sarbanes-Oxley passed as part of the Dodd-Frank Act, which proscribes employer retaliation and expressly states that "[n]o predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a dispute arising under this section." 18 U.S.C. § 1514A(e)(2). In their opening brief, defendants readily

acknowledged that this statutory exemption means the arbitration agreement between Bruker and Wussow *cannot* be enforced with respect to his Sarbanes-Oxley or "SOX" claim. (*See* Defs. Op. Br. (dkt. #11) at 5 (acknowledging that "Plaintiff's SOX claim is statutorily excluded from arbitration").) Ironically enough, as defendants point out, a similar cause of action for whistleblower retaliation under Dodd-Frank (15 U.S.C. § 78u-6(h)(1)) includes *no* express anti-arbitration provision. Nevertheless, Wussow refused to submit even his Dodd-Frank claim to arbitration, instead pressing for resolution of both claims in this court. For this reason, defendants frame the issue now before the court as: (a) whether the court must direct the Dodd-Frank claim to arbitration consistent with the parties' written agreement; and if so, (b) whether the court should stay proceedings on the related SOX claim pending that arbitration. The answer to the first question is almost certainly "yes," but given plaintiff's refusal to drop his claim under Dodd-Frank, the answer to the second question is far less clear given arguably inconsistent directions by Congress and the likelihood that whichever claim is decided first is likely to have a largely preclusive, if not definitive, effect on the other.

Moreover, the second question posed appears to be a matter of first impression for this circuit. Deferring to the greater weight of authority from other circuits, the court holds that Wussow's Dodd-Frank claim is arbitrable and, therefore, must be submitted to binding arbitration consistent with the express provision of the parties' employment agreement and mandatory arbitration clause. While the court may in its discretion and normally would stay all proceedings in this court pending the outcome of that arbitration, doing so here would frustrate Congress's express intent with respect to

plaintiff's claim under Sarbanes-Oxley. Accordingly, the court will refer the Dodd-Frank claim to arbitration while proceeding with the Sarbanes-Oxley claim in this court under the current, and if necessary, an expedited schedule.

## BACKGROUND

A motion to compel arbitration is reviewed in a manner similar to one for summary judgment: the court considers all evidence in the record and draws all reasonable inferences in the light most favorable to the non-moving party. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002); *Scheurer v. Fromm Family Foods LLC*, No. 15-CV-770-JDP, 2016 WL 4398548, at *1 (W.D. Wis. Aug. 18, 2016). Although "[a] district court must promptly compel arbitration once it is satisfied that the parties agreed to arbitrate," *Tinder*, 305 F.3d at 735 (citing 9 U.S.C. § 4), the party moving to compel arbitration must demonstrate that any applicable agreement requires the parties to arbitrate the claims that plaintiff has brought in this case. *Scheurer*, 2016 WL 4398548, at *1.

A. **Employment**

Defendant Bruker Nano, Inc., is a wholly-owned subsidiary of defendant Bruker Corporation. (Unless otherwise indicated, both defendant entities are referred to collectively in this opinion as "Bruker.") The individual defendants, Michael Szulczewski and Stephen Minne, were at relevant times management-level employees at Bruker Nano with direct supervisory responsibilities over plaintiff Michael Wussow. Wussow was hired by Bruker Nano in January 2014 to serve as a director of product line management.

On or about January 24, 2014, Wussow and Bruker executed an "Employee Patent, Confidentiality and Arbitration Agreement." (Dkt. #13, at ¶2.) That agreement included the following arbitration provision:

> 8.  **Arbitration and Equitable Relief**
>
> 8.1 **Arbitration**
>
> In consideration of my employment with the Company, its promise to arbitrate all employment related disputes and my receipt of the compensation, pay raises and other benefits paid to me by the Company, at present and in the future, I agree that any and all controversies, claims, or disputes with anyone (including the Company and any employee, officer, director, shareholder or benefit plan of the Company in their capacity as such or otherwise) arising out of, relating to, or resulting from my employment with the Company or the termination of my employment with the Company, including any breach of this agreement, shall be subject to binding arbitration. Disputes which I agree to arbitrate, and thereby agree to waive any right to a trial by jury, include any statutory claims under state or federal law, including, but not limited to, claims under Title VII of the Civil Rights Act of 1964 the Older Workers Benefit Protection Act, claims of harassment, discrimination or wrongful termination and any statutory claims. I further understand that this agreement to arbitrate also applies to any disputes that the Company may have with me.
>
> 8.2 **Procedure**
>
> I agree that any arbitration will be administered by the American Arbitration Association ("AAA") or another mutually acceptable arbitration administrator. I agree that the arbitrator shall have the power to decide any motions brought by any party to the arbitration, including motions for summary judgment and/or adjudication and motions to dismiss and demurrers, prior to any arbitration hearing. I also agree that the arbitrator shall have the power to award any remedies, including attorneys' fees and costs, available under applicable law. I understand the Company will pay for any administrative or hearing fees charged by the arbitrator or administrator except that I shall pay the first $200.00 of any filing fees associated with any arbitration I initiate. I agree that the decision of the arbitrator shall be in writing.
>
> 8.3 **Administrative Relief**
>
> I understand that this agreement does not prohibit me from pursuing an administrative claim with a local, state or federal administrative body such as the National Labor Relations Board or the Equal Employment Opportunity Commission. This agreement does, however, preclude me from pursuing court action regarding any such claim.

(Dkt. #14, at 5-6).

## B. Protected Conduct and Termination

From January 2014, Wussow was employed by Bruker for approximately 16 months. During that period, he allegedly discovered that defendants and other Bruker employees were engaging in improper and possibly fraudulent revenue recognition practices that potentially violated company policy, SEC rules, and federal law. In response, Wussow claims to have "repeatedly and explicitly urged his fellow employees not to engage in this misconduct and reported it to his superiors, refusing to participate in it himself and strenuously opposing and objecting to it." (Dkt. #1, at ¶ 24.)

Even though defendants allegedly refused to stop or investigate the practices in question, and affirmatively dismissed or minimized his concerns, Wussow continued to press his concerns by opposing those practices and reporting them to his supervisors and other senior Bruker employees. Because of this "protected conduct," Wussow alleges, "defendants discriminated and retaliated against him . . . by berating him for his reports, stripping him of critical job functions in order to isolate him from further contact with defendants' continuing unlawful conduct, and ultimately by terminating his employment altogether." *Id.* at ¶ 26.

Wussow's last day of employment at Bruker was July 28, 2015. On that day, Wussow was summoned to a meeting with defendant Steve Minne, who informed him that his position was being terminated because of a company restructuring involving employee reductions in his division. At that time, Wussow alleges upon information and

5

belief, no other employees in his division were terminated, and no one else made reports or complaints regarding improper or unlawful activity within the division. *Id.* at ¶¶ 68-69.

### C. Lawsuit and Request for Arbitration

On June 23, 2016, Wussow filed this action asserting two statutory claims for discriminatory employment action. First, he asserts a claim for retaliation in violation of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A. Second, he asserts a claim for retaliation in violation of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank"), 15 U.S.C. § 78u-6(h)(1)(A)(iii). Both claims are based on the same factual allegations and adverse employment actions summarized above. *See id.* ¶¶ 75-84.

Within a few days of the complaint being filed, defendants' counsel contacted Wussow's counsel to request that he submit his claims to binding arbitration in accordance with the terms of the parties' arbitration agreement. Through counsel, Wussow declined, asserting that his claims were not subject to arbitration. (Dkt. #12, ¶¶ 2-5.) Defendants then filed the pending motion to compel arbitration (dkt. #10), seeking an order staying all proceedings and compelling Wussow to submit his claims to arbitration.[1]

---

[1] While the individual defendants, Szulczewski and Minne, are not parties to the employment agreement between Wussow and Bruker, defendants argue that they nonetheless have standing to enforce the agreement as third-party beneficiaries. (Dkt. #11, at 3-4.) Certainly, the broad language of the arbitration clause supports this position -- "any and all controversies, claims, or disputes"= with anyone (including the Company and any employee, officer, director, shareholder, or benefit plan of the Company in their capacity as such or otherwise) arising out of, relating to, or resulting from my employment" -- although defendants rely on Wisconsin contract law in support, while the employment agreement explicitly provides that it is to be governed and

OPINION

A party moving to compel arbitration must show: "(1) an agreement to arbitrate, (2) a dispute within the scope of the arbitration agreement, and (3) a refusal by the opposing party to proceed to arbitration." *Druco Restaurants, Inc. v. Steak N Shake Enterprises, Inc.*, 765 F.3d 776, 781 (7th Cir. 2014) (quoting *Zurich American Ins. Co. v. Watts Indus., Inc.*, 466 F.3d 577, 580 (7th Cir. 2006)). Unsurprisingly, Wussow does not challenge or dispute defendants' showing as to the first and third elements since the undisputed evidence establishes that he entered into an agreement to arbitrate any employment dispute with Bruker and subsequently refused to submit either of his claims to arbitration. The sole issue to be resolved is whether the arbitration agreement can be enforced with respect to Wussow's two statutory claims.

The Federal Arbitration Act promotes a "liberal federal policy favoring arbitration, and the fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (internal citations omitted). Agreements to arbitrate must be placed on an equal footing with other contracts and enforced according to their terms. *Id.* While a court "cannot compel a party to arbitrate a dispute unless that party has contractually agreed to do so," *Karl Schmidt Unisia, Inc. v. Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am., UAW Local 2357*, 628 F.3d 909, 912 (7th Cir. 2010), where parties *have* entered into such an agreement, as here, "ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of

---

enforced in accordance with the laws of Massachusetts, where Bruker is headquartered. (Dkt. #14, at 5-6.) In any event, Wussow does *not* contest Szulczewski's or Minne's standing to enforce the agreement. Accordingly, the court proceeds on the understanding that they both have standing to enforce the agreement, along with their employer, Bruker.

arbitration." *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989). Indeed, where an arbitration clause is broad, as it unquestionably is here, a formal *presumption* in favor of arbitrability applies. *E.g.*, *Karl Schmidt Unisia, Inc.*, 628 F.3d at 913; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. TriMas Corp.*, 531 F.3d 531, 536 (7th Cir. 2008); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999). For reasons explained below, this presumption dictates that plaintiff's Dodd-Frank claim be referred to arbitration while Congress's express exception for a claim under Sarbanes-Oxley dictates an opposite conclusion.

I.  **Arbitrability of Dodd-Frank Claim**

The parties agree that the SOX claim is exempted from arbitration by the clear language of 18 U.S.C. § 1514A(e)(2). So the only question is whether the Dodd-Frank claim is as well. Given the broad, inclusive language of the contract's arbitration provision itself, the general presumption in favor of arbitrability, and the lack of any statutory exemption in the text of 15 U.S.C. §78u-6, the court begins with a strong presumption that plaintiff's Dodd-Frank claim *must* be arbitrated even though the SOX claim cannot be. Plaintiff's primary contention to the contrary is that his Dodd-Frank claim, like his SOX claim, is exempt from enforcement of the arbitration agreement, because it, too, concerns a "dispute arising under" 18 U.S.C. § 1514A (the section creating the SOX cause of action for retaliation).

In support of his position, plaintiff cites a lone, federal district court case out of Connecticut as holding that a Dodd-Frank retaliation claim, "although enabled by § 78u-

6(h)(1)(B)(i) (the provision creating the cause of action) and § 78u-6(h)(1)(A)(iii)(the provision referring to the prohibited conduct), also 'aris[es] under' § 1514A (the section that actually defines the prohibited conduct)." (Pl.'s Br. (dkt. #15) at 2) (quoting *Wiggins v. ING U.S., Inc.*, 2015 WL 3771646 at *7 (D. Conn. June 17, 2015)). Relying on this language in the *Wiggins* case, plaintiff then argues that because the substantive provisions of SOX (18 U.S.C. § 1514A) and Dodd-Frank (15 U.S.C. § 78u-6(h)(1)) prohibit the *same* conduct – employer retaliation against whistleblowers – both are subject to the anti-arbitration provision found only in 18 U.S.C. § 1514A(e)(2) ("No predispute arbitration agreement shall be valid or enforceable, if the agreement requires arbitration of a *dispute arising under this section*.") (emphasis added).[2]

Defendants counter that the express text of § 1514A(e)(2), as well as the structure of the two Acts, cannot support such an interpretation. Far from "arising under" the same *section* as the SOX anti-arbitration provision, defendants point out that "the Dodd-Frank cause of action [is] not . . . located in the same **title** of the United States Code." (Defs.' Br. (dkt. #11) at 7) (emphasis in brief) (paraphrasing *Khazin v. TD Ameritrade Holding Corporation*, 773 F.3d 488, 492 (3d Cir. 2014)).

In *Khazin*, the Third Circuit did rely on Dodd-Frank's "Anti-Arbitration Provision"

---

[2] Wussow also cites two other district court cases that did *not* involve Dodd-Frank claims to further support his more policy-based proposition that the SOX Anti-Arbitration Provision was intended by Congress to be interpreted broadly so as to cover other claims based on the same substantive conduct. However, those cases -- *Laubenstein v. Conair Corp.*, 2014 WL 6609164 at *2 (W.D. Ark. Nov. 19, 2014), and *Stewart v. Doral Financial Corporation*, 997 F. Supp. 2d. 129 (D. P.R. 2014) -- both involved state law claims that were premised on the same adverse employment actions as the SOX federal claims. Neither involved another, complimentary *federal* statutory cause of action lacking the express anti-arbitration language of the SOX Anti-Arbitration Provision, as is the case in the Dodd-Frank retaliation provision, arguably reflecting Congressional intent to support (indeed, under the parties' prevailing case law, generally compel) arbitration.

applying expressly to disputes "arising under this section," which the court found specifically referred to § 1514A -- the SOX whistleblower cause of action. 773 F.3d at 491. The Third Circuit acknowledged that "Dodd-Frank's amendments to the Securities Exchange Act of 1934, which establish[ed] a corporate whistleblowing reward program, accompanied by a new provision prohibiting any employer from retaliating against a whistleblower for providing information" to the SEC, could have been drafted more clearly. *Khazin*, 773 F.3d at 491 (internal citation and quotation marks omitted). The court also noted that the pre-existing Sarbanes-Oxley and the newly-created Dodd-Frank causes of action for whistleblowers "are, however, 'substantively different,' and each has its 'own prohibited conduct, statute of limitations, and remedies.'" *Id.* (quoting *Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d, 491, 497 (S.D.N.Y. 2014)).[3] Given these differences, the Third Circuit found it likely that Congress's failure to extend the Anti-Arbitration Provision to the Dodd-Frank whistleblower cause of action (15 U.S.C. § 78u-6) was deliberate. Regardless, the court found a literal reading of the provision and the strong presumption in favor of arbitration required arbitration of Khazin's Dodd-Frank claim absent an express, statutory exception.

In addition to the Third Circuit Court of Appeals in *Khazin*, defendants identify two other federal district court decisions holding that the Anti-Arbitration Provision in 18 U.S.C. § 1514A does not apply to a Dodd-Frank claim for retaliation brought under 15 U.S.C. § 78u-6(h)(1). *See Ruhe v. Masimo Corp.*, 2011 WL 4442790, at *4 (C.D. Cal.

---

[3] Among other differences, notably, a "whistleblower" who prevails on a SOX retaliation claim can recover back pay, while the same individual who prevails on a Dodd-Frank retaliation claim can recover *double* back pay. Compare 18 U.S.C. § 1514A(c) *with* 15 U.S.C. § 78u-6(h)(1)(C).

10

Sept. 16, 2011) ("Plaintiffs must arbitrate their claims brought pursuant to 15 U.S.C. 78–u because the Dodd–Frank [A]ct does not render predispute arbitration agreements invalid or unenforceable for actions brought pursuant to this section. The Dodd–Frank [A]ct contains three sections creating rules to protect whistleblowers to be inserted into three different sections of the United States Code. The Dodd–Frank Act's whistleblower amendments to the Securities Exchange Act of 1934 and the Sarbanes–Oxley Act both contain provisions that render pre-dispute arbitration agreements unenforceable for claims brought under these two sections. Unlike these other whistleblower provisions of the Dodd–Frank Act, Section 78–u contains no such provision."); *Murray v. UBS Sec., LLC*, 2014 WL 285093 (S.D.N.Y. Jan. 27, 2014) (citing *Ruhe* and declining to apply § 1514A's anti-arbitration provision to § 78u-6).

None of these cases, including the Third Circuit's decision in *Khazin,* involve a plaintiff bringing *both* Dodd-Frank *and* SOX claims in a single, federal lawsuit. Defendants argue that the result should be the same, however, since compelling arbitration would pose no affront to any Congressional intent to enhance whistleblower rights; the case simply involves two different statutes that achieve that same purpose via two different procedural mechanisms. (Defs.' R. Br. (dkt. #16) at 3) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) ("By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.")). If Congress chose to structure the two statutes in such a way that they offer different approaches to dispute resolution, then defendants argue that the court's role is to realize

11

and give effect to that choice, not to explain it away and meld the two approaches into one.

Here, other courts have inferred from the statutory context that Congress consciously adopted differing approaches with respect to procedure and forum. *See Khazin*, 773 F.3d at 493 ("The fact that Congress did not append an anti-arbitration provision to the Dodd–Frank cause of action while contemporaneously adding such provisions elsewhere suggests, however, that the omission was deliberate.") (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009)); *see also Ruhe*, 2011 WL 4442790, at *4 (rejecting argument that a SOX-type anti-arbitration provision was "unintentionally omitted" from § 78u-6 of Dodd-Frank, and declining to read one in). Thus, defendants correctly point out that the weight of authority supports a finding that Dodd-Frank claims *are* arbitrable. Indeed, plaintiff appears to concede that the Connecticut District Court's *Wiggins* decision is the *only* case holding that "the pre-dispute arbitration waiver in [SOX] extends all the way to claims arising under the Dodd-Frank Act." (Defs.' R. Br. (dkt. #16) at 1.)

The majority view also appears to have the better rationale. Contrary to plaintiff's argument, it is not necessarily clear (as the *Wiggins* court seemed to assume) that §1514A "actually defines the prohibited conduct" that allows a whistleblower to sue under § 78u-6(h)(1). *Wiggins*, 2015 WL 3771646 at *7. In fact, because 15 U.S.C. § 78u-6(a) includes its own operative definition of "whistleblower," and § 78u-6(h)(1)(A) refers to numerous other legal provisions (including several other sections of titles 15 and 18) in outlining lawful whistleblowing activity that is protected from retaliation, it is not clear

to the court that any reference at all to 18 U.S.C. § 1514A is necessary to bring a Dodd-Frank retaliation claim under § 78u-6(h)(1)(B)(i). The statutory text suggests that a Dodd-Frank retaliation claim can be sustained entirely by the substantive prohibitions throughout § 78u-6, so plaintiff's argument that Wussow's Dodd-Frank claim really "arises under" § 1514A contradicts both the statute's text, as well as common sense. *See Khazin*, 773 F.3d at 492-94; *Murray*, 2014 WL 285093, at *8-11 (citing *Ruhe*, 2011 WL 4442790, at *4).

Moreover, the argument in *Wiggins* that both claims really "arise under" SOX, even if plausible in theory, loses credence when considered in the practical context of the statutory scheme. As plaintiff emphasizes, the amendment to 18 U.S.C. § 1514A adopting the SOX Anti-Arbitration Provision was enacted by Congress in 2010 *as part of the Dodd-Frank Act*. What cannot be discounted or ultimately overcome, however, is that nothing in the Dodd-Frank legislation introduced or applied any such provision to 15 U.S.C. § 78u-6. "Although the Dodd–Frank Act amended other statutes to require a post-dispute agreement to arbitrate, there is no analogous provision in the anti-retaliation provision of the Dodd–Frank Act itself." *Citigroup Glob. Markets Inc. v. Preis*, No. 14 CIV. 08487 LGS, 2015 WL 1782135, at *4 (S.D.N.Y. Apr. 14, 2015) (holding retaliation claim under 15 U.S.C. § 78u–6(h) to be arbitrable) (citing *Khazin*, 773 F.3d at 492). Thus, as the Third Circuit observed, "[t]he text and structure of Dodd–Frank compel the conclusion that whistleblower retaliation claims brought pursuant to 15 U.S.C. § 78u–6(h) are not exempt from predispute arbitration agreements." *Khazin*, 773 F.3d at 492.

There is a further problem with plaintiff's argument. Congress's apparent

13

inconsistent treatment with the whistleblower provisions under SOX and Dodd-Frank has been the subject of substantial discussion and a fair amount of criticism. *See, e.g.,* Nizan Geslevich Packin & Benjamin P. Edwards, *Regulating Culture: Improving Corporate Governance with Anti-Arbitration Provisions for Whistleblowers*, 58 William & Mary L. Rev. 41 (2016); John K. Lisman, *Arbitration Agreement Arbitrage?: Statutory Discrepancy Leads to Third Circuit Victory for Dodd-Frank Whistleblower Defendants in Khazin v. TD Ameritrade Holding Corp.*, 60 Vill. L. Rev. 753 (2015). Yet Congress has done nothing to expressly expand the SOX Anti-Arbitration Provision to Dodd-Frank whistleblower claims. Given this history, this court is hesitant to apply a different interpretation, while acknowledging that perhaps the Seventh Circuit Court of Appeals might.[4]

To obtain relief for the same acts of alleged employment discrimination, plaintiff Wussow chose to bring two separate retaliation claims under the statutory provisions enabled by SOX (18 U.S.C. § 1514A) and Dodd-Frank (15 U.S.C. § 78u-6), respectively. Presumably, he had his reasons for doing so. Having made that choice, each of Wussow's claims must now be analyzed under the statutory provision that enabled it -- Wussow cannot pick and choose the most favorable aspects of each statutory structure and apply them to both claims. The court agrees with defendants and their cited authorities that

---

[4] The best argument for extending the Anti-Arbitration Amendment in Dodd-Frank to Dodd-Frank whistleblower claims themselves is that the Third Circuit's decision in *Khazin* discounted the possibility that the Amendment's language rendering invalid and unenforceable any pre-dispute arbitration agreement if it "requires arbitration of a dispute arising under this section" could have been referring to the same section of the Dodd-Frank Act itself, entitled "Section 922. Whistleblower Protection." In fairness, however, the Third Circuit considered that argument and concluded that "this is not the 'section' to which the Anti-Arbitration Provision refers." *Khazin*, 773 F.3d at 492 n.3 ("It would be nonsensical for the word 'section' in the Anti–Arbitration Provision to refer to Section 922 of the Act when Section 922 expressly places its constituent parts in separate 'sections' of the Code."). In any event, plaintiff does not make this argument in his brief in opposition.

the Dodd-Frank claim must be arbitrated, because it contains no express exemption and is subject to the arbitration agreement that Wussow executed with Bruker.

## II. Motion to Stay All Proceedings

Having determined that Wussow's Dodd-Frank claim *is* arbitrable and, therefore, *must* be submitted to arbitration, the question remains what to do with his remaining SOX claim, since Wussow *cannot* be compelled to arbitrate under the exemption in 18 U.S.C. § 1514A(e)(2)). Defendants request a stay of all proceedings in this court pending arbitration of the Dodd-Frank claim. They argue that such a stay is required by the FAA, or in the alternative, defendants ask that the court exercise its discretion to stay the SOX claim. Wussow objects, contending that his SOX claim can and should be allowed to proceed in this court first.

Section 3 of the FAA provides that if a court determines an "issue" before it to be properly referable to arbitration under a valid agreement to arbitrate, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. *See also Volkswagen Of Am., Inc. v. Sud's Of Peoria, Inc.*, 474 F.3d 966, 971 (7th Cir. 2007) ("For arbitrable issues, a § 3 stay is mandatory.") (citing *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987)). This only confirms that Wussow's arbitrable *Dodd-Frank* claim must be stayed pending arbitration, however; it says little or nothing about how his non-arbitrable SOX claim should be treated. Indeed, "[w]hen the [c]ourt is confronted with a mix of arbitrable and non-arbitrable issues, 'the FAA does not give courts express guidance on how to proceed.' In this instance, courts have discretion to

stay non-arbitrable claims pending the outcome of an arbitration proceeding." *Slinger Mfg. Co. v. Nemak, S.A.*, No. 08-C-656, 2008 WL 4425889, at *5 (E.D. Wis. Sept. 24, 2008) (quoting *Volkswagen of America, Inc.*, 474 F.3d at 971) (internal citation omitted).

Defendants argue that a stay of all proceedings in this case is required by the rationale of *Volkswagen of America, Inc.*, but they misread or overstate that decision. At most, "[t]hat decision holds that a district court *should* stay an entire suit pending arbitration if there is a serious danger (should it fail to do so) of inconsistent rulings or needless duplication of effort." *GEA Grp. AG v. Flex-N-Gate Corp.*, 740 F.3d 411, 418–19 (7th Cir. 2014) (emphasis added) (citing *Volkswagen of America, Inc.*, 474 F.3d at 972–74). In fairness, *Volkswagen* does suggest that a failure to stay court proceedings under those circumstances *may* constitute an abuse of *discretion*, *Volkswagen of America, Inc.*, 474 F.3d at 972, but neither the Supreme Court nor the Seventh Circuit has held that a stay is automatic or compulsory.

Thus, in light of the basic guidance under the FAA and Seventh Circuit precedent, the undertaking before the court is well-summarized as follows:

> Whenever a case includes both arbitrable and non-arbitrable claims or issues, the court may, in its discretion, stay the entire case or proceed with the non-arbitrable claims. *Volkswagon of Am., Inc.,* 474 F.3d at 971. The court should stay the entire case if staying only the arbitrable claims while proceeding with the non-arbitrable claims "risks inconsistent rulings because the pending arbitration is likely to resolve issues material to the lawsuit." *Id.* at 972. In considering whether to stay the entire case, the court must consider not only the risk of inconsistent rulings, but also the extent to which the parties are bound by the arbitration, and the prejudice that may result from delay. *Id.*

*Derse, Inc. v. Haas Outdoors, Inc.*, No. 09-CV-97, 2009 WL 2228736, at *4 (E.D. Wis. July 21, 2009).

16

Here, the risk of inconsistent rulings is real because both retaliation claims are based on the same theory and legal standard, and both stem from exactly the same set of facts and adverse employment actions. For this reason, it is obvious that an arbitration of the Dodd-Frank claim would likely resolve issues material to the litigation of the SOX claim in this court. Indeed, except for differing statutory remedies, it seems likely to resolve the dispute entirely, as the two claims are so closely linked that they are basically identical in substance. On the other hand, if the two claims were to advance simultaneously in parallel proceedings, one in private arbitration and one in public litigation here, it seems likely, if not unavoidable, for the tribunals to decide certain issues differently based on conflicting factual or legal determinations. Normally, these considerations would suggest that "the most appropriate and efficient course of action is to stay the entire case pending arbitration." *Derse, Inc.*, 2009 WL 2228736, at *4; *Volkswagen of America, Inc.*, 474 F.3d at 971.[5] However, this is *not* the ordinary case.

As plaintiff argues, "[s]taying the SOX claim pending arbitration of the Dodd-Frank claim would effectively negate the anti-arbitration provision set forth in § 1514A(e)(2)." (Pl. Br. (dkt. #15) at 10.) While defendants point out that Wussow *chose* to supplement his SOX claim with a Dodd-Frank claim (for the same alleged acts of retaliation), defendants never explain *why* plaintiff should have to choose between foregoing his express right to resolution of his SOX claim in federal district court and the

---

[5] In other similar situations, the court has in the past determined that "the proper procedural course is to close the case administratively, subject to immediate reopening if all issues are not resolved in arbitration." *Wisconsin v. Ho-Chunk Nation*, 564 F. Supp. 2d 856, 863 (W.D. Wis. 2008). But because defendants do not ask to close the case administratively, the court's consideration will be limited to whether a stay of all proceedings is appropriate.

more generous remedies offered by Dodd-Frank. More importantly, the Supreme Court has long since found that it is typically appropriate for parties to bargain to arbitrate statutory claims "*unless* Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Gilmer v. Interstate Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) (emphasis added).

Congress has done *exactly* that with respect to Wussow's SOX claim, and this court is strongly disinclined to deny him that opportunity, especially because of (rather than despite) the nearly identical elements of the two claims. Otherwise, this court would be effectively denying plaintiff the right to a federal forum in substantial part (if not entirely) should the court defer to arbitration of the Dodd-Frank claim. *See Murray v. UBS Securities, LLC*, 2015 WL 769586, at *8 (S.D.N.Y. Feb. 24, 2015) (denying a similar motion to stay a SOX whistleblowing claim pending arbitration of Dodd-Frank claim); *see also Citigroup Glob. Markets Inc. v. Preis*, No. 14 CIV. 08487 LGS, 2015 WL 1782135, at *5 (S.D.N.Y. Apr. 14, 2015) (denying motion to dismiss SOX claim while arbitration of related Dodd-Frank claim was ongoing). In addition, any inefficiency is largely illusory since this court is likely to resolve the remaining SOX claim here before the arbitration of the Dodd-Frank claim has even begun.[6] Finally, defendants have identified no case in which a federal district court has stayed a SOX claim pending arbitration of a Dodd-Frank claim, as they would have the court do here.

---

[6] To the extent that turns out not to be the case, if arbitration is scheduled promptly and the arbitrator declines to wait for resolution the SOX claim before adjudicating the Dodd-Frank claim, the court is willing to consider expediting this schedule and holding a trial of plaintiff's SOX claim first.

For all these reasons, the court exercises its discretion, allowing the two claims to proceed on parallel tracks, each in its appropriate forum as determined by Congressional intent and the agreement of the parties.

**ORDER**

IT IS ORDERED that the motion to compel arbitration and stay all proceedings filed by defendants Bruker Corporation, Bruker Nano, Inc., Michael Szulczewski, and Steve Minne (dkt. #10) is GRANTED in part and DENIED in part as follows:

1) Plaintiff Michael C. Wussow shall submit his arbitrable (Dodd-Frank, 15 U.S.C. § 78u–6(h)) claim against defendants to binding arbitration pursuant to the terms of the parties' employment agreement, and the court will stay that claim in this court pending its resolution in arbitration.

2) All proceedings on plaintiff's SOX claim in this matter will continue unabated pending arbitration between the parties of the arbitrable claim as currently scheduled. There will be no amendments to that schedule except upon a showing of extraordinary cause. Should proceedings in the Dodd-Frank arbitration threaten to overtake those in this court, the court would also entertain a motion to expedite the trial here.

Entered this 28th day of June, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge